UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DIVISION

CASE NO. 24-cv-24920-WILLIAMS/GOODMAN

FANATICS, LLC,

    Plaintiff,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

    Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Fanatics, LLC ("Plaintiff" or "Fanatics") filed a Motion for Entry of a Preliminary Injunction against the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively, "Defendants"). [ECF No. 10 ("Motion")].[1] United States District Judge Kathleen M. Williams previously adopted the Undersigned's Report and Recommendations and granted Plaintiff's request for a temporary restraining order. [ECF No. 17].

Judge Williams referred Plaintiff's request for a preliminary injunction to me for a hearing and report and recommendations, "[p]ursuant to 28 U.S.C. § 636 and the

---

[1] There are 31 Defendants total. Plaintiff attached its Schedule "A" to its Motion and Supplemental Declaration. [ECF Nos. 10, pp. 18–19; 13-1, p. 4]. The list includes each Defendant's name or domain name.

Magistrate Rules of the Local Rules for the Southern District of Florida[.]" [ECF No. 17]. The Undersigned held a hearing on Plaintiff's Motion for a preliminary injunction on March 24, 2025. [ECF No. 25].

For the reasons set forth below, the Undersigned **respectfully recommends** that the Court **grant** this Motion.

I.     FACTUAL BACKGROUND

This is a trademark infringement case in which Plaintiff alleges that Defendants, through their individual online-based seller stores, are advertising, promoting, offering for sale, or selling goods and/or services using what Plaintiff has determined to be infringements of its registered trademarks ("Fanatics Trademarks"). Plaintiff's Amended Complaint includes four counts: (1) Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114); (2) False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) Common Law Unfair Competition; and (4) Common Law Trademark Infringement. [ECF No. 25].

Plaintiff is a limited liability company engaged in the business of manufacturing and distributing its high-quality goods and services throughout the United States. *Id*. at ¶¶ 8–9. It "has developed its brand as a leader in selling and manufacturing licensed sports merchandise." *Id*. at ¶ 8.

Plaintiff registered various trademarks to protect its brand. *Id*. at ¶ 21.[2] The

---

[2]     A copy of Plaintiff's Certificates of Registration for the Fanatics Trademarks is attached to Plaintiff's Amended Complaint. [ECF No. 25-1].

2

Fanatics Trademarks "are used in connection with the manufacture and distribution of high-quality goods and services[.]" *Id*. Plaintiff discovered that Defendants "directly engage in unfair competition with Fanatics by [ ] advertising, offering for sale, and/or selling goods and/or services using counterfeits and infringements of one or more of Fanatics' trademarks to consumers within the United States and this [D]istrict through at least the interactive commercial websites and operating under the Subject Domain Names[.]" *Id*. at ¶ 17. Plaintiff alleges that Defendants are deliberately "creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from [Plaintiff's] legitimate market for its genuine goods and services." *Id*.

As part of its investigation into Defendants, Plaintiff's counsel accessed the commercial Internet websites operating under Defendants' domain names. [ECF No. 10-2, ¶ 2]. Plaintiff's counsel documented its investigation and provided its findings to Plaintiff. [ECF Nos. 10-1, ¶ 10; 10-2, ¶ 2]. Plaintiff inspected the detailed web page captures and images[3] reflecting Defendants' websites using the Fanatics Trademarks in connection with the products and/or services offered for sale, and determined that the websites were not affiliated with or approved by Plaintiff. [ECF No. 10-1, ¶¶ 9–11].

According to Plaintiff, Defendants' actions have irreparably damaged its goodwill and reputation. *Id*. at ¶ 8. Consequently, Plaintiff brought this action against Defendants [ECF No. 1] and thereafter filed this Motion. Plaintiff also filed declarations in support of

---

[3] Plaintiff included those documented findings in its exhibits to this Motion. [ECF Nos. 10-3–10-4].

3

its Motion from: (1) its Vice President re: Legal Affairs and Brand Protection, Jim Aronowitz, and (2) its legal counsel, Stephen Gaffigan. [ECF Nos. 10-1–10-2].

On December 16, 2024, Plaintiff filed its Complaint [ECF No. 1], and thereafter its Amended Complaint on March 17, 2025 [ECF No. 25]. On December 17, 2024, Plaintiff filed an *ex parte* motion for entry of a temporary restraining order and preliminary injunction. [ECF No. 10]. The District Court referred these matters to the Undersigned. [ECF Nos. 12; 17].

On February 13, 2025, the Undersigned entered a Report and Recommendations recommending that the District Court grant Plaintiff's motion for a temporary restraining order ("TRO"). [ECF No. 14]. On March 12, 2025, the District Court adopted the Report and Recommendations and granted Plaintiff's motion for a TRO. [ECF No. 17]. The District Court also set a preliminary injunction hearing before the Undersigned for March 24, 2025. *Id.* at ¶ 13.

Pursuant to the District Court's March 12, 2025 Order, Plaintiff properly served Defendants with a copy of the Complaint, the *Ex Parte* Application for Entry of a TRO, the Report and Recommendations, and the Court's March 12, 2025 Order, thereby providing notice and copies of those same documents and materials to each Defendant's e-mail accounts and/or online contact form, via registrar, and by posting copies of them on the website located at http://servingnotice.com/fan2rA/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant. [ECF Nos. 27—30].

On March 24, 2025, the Undersigned conducted a videoconference hearing on Plaintiff's Motion, at which only counsel for Plaintiff was in attendance. At the hearing, Plaintiff's counsel noted that no Defendant filed an objection or any other submission concerning the TRO or the requested Preliminary Injunction. In addition, counsel confirmed that no Defendant (or attorney or agent for any Defendant) contacted her office, even informally,[4] in connection with the TRO and requested Preliminary Injunction.

## II.   LEGAL STANDARD AND ANALYSIS

The standard for obtaining a temporary restraining order and a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla.), *aff'd*, 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a TRO or preliminary injunction, a party must demonstrate:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest.

*Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). A preliminary injunction may only issue after notice to the adverse party. Fed. R. Civ. P. 65(a).

---

[4]   This includes phone calls, e-mail, and text messages.

5

The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted).

*Elements for a Preliminary Injunction*

As noted above, Plaintiff's request must meet four elements:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest.

*Schiavo ex. Rel Schindler*, 403 F.3d at 1225–26. Based on Plaintiff's Motion, its Amended Complaint, and the declarations submitted with the attached exhibits, Plaintiff has a strong probability of proving at trial that Defendants continuously infringed Plaintiff's intellectual property, and, that if equitable relief is not granted, then the continued infringement of those works will likely cause Plaintiff to suffer an immediate and irreparable injury.

The first element Plaintiff must demonstrate is whether it will have "a substantial likelihood of success on the merits." *Id*. at 1225. "[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which is likely to cause confusion, or to

6

cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I, Plaintiff must show "(1) that its mark has priority and (2) that [ ] [D]efendants' mark is likely to cause consumer confusion." *Id*.

Plaintiff has sufficiently alleged and established each of these elements: (1) Plaintiff's licensed exclusive rights to the Fanatics Trademarks preceded Defendants' infringement; (2) Defendants are selling, offering for sale, and marketing products and/or services with the Fanatics Trademarks without Plaintiff's consent or authorization; and (3) the marks used in connection with the products and/or services Defendants are selling, offering for sale, and marketing are so similar to the Fanatics Trademarks that they are likely to cause consumer confusion. [ECF Nos. 25, ¶¶ 21–43, 45–48; 10-1–10-4; 13-1–13-3]. Based on its Motion, attached declarations, exhibits, and the Amended Complaint, the Undersigned finds that Plaintiff has established a *prima facie* case of trademark infringement[5] and consequently demonstrated a high likelihood of success on the merits.

---

[5] "A movant need only demonstrate a substantial likelihood of success on one of its claims to obtain a preliminary injunction." *White Cap. L.P. v. Heyden Enters., LLC*, No. 23-14248-CIV, 2024 WL 3738925, at *3 (S.D. Fla. July 19, 2024), *report and recommendation adopted*, No. 23-14248-CIV, 2024 WL 3861528 (S.D. Fla. Aug. 19, 2024) (*citing Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'" (citation omitted)).

"Defendants do not have, nor have they ever had, the right or authority to use the Fanatics [Trademarks] for any purpose." [ECF Nos. 10, p. 3; 25, ¶ 23]. The screenshot attachments to Plaintiff's Motion, together with the declarations, show Defendants selling products and/or services through their Internet websites operating under their domain names that look **identical** to the Fanatics Trademarks. [ECF Nos. 10-1–10-4; 13-1–13-3].

The next element Plaintiff must demonstrate is that if its requested relief is not granted, then it will suffer irreparable injury. *Schiavo ex. Rel Schindler*, 403 F.3d at 1225–26. "In order for an injury to be irreparable, it cannot be undone through monetary remedies." *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1362 (S.D. Fla. 2012). Plaintiff has met this burden.

Plaintiff argues that Defendants' actions damage its reputation and divert customers because of Defendants' control over online markets and inferior product quality. [ECF Nos. 10, p. 5; 10-1, ¶ 21]. "Each individual Defendants' actions, alone, cause Fanatics irreparable harm. However, the sheer number of counterfeit e-commerce store operators act as a force multiplier of those individual harms and create a massive single reputation harm to Fanatics." [ECF No. 10-1, ¶ 15]. "As a result of the availability of the goods and/or services using counterfeits and infringements of the Fanatics trademarks offered for sale by Defendants, Fanatics will experience irreparable injury to its reputation among consumers absent the entry of an appropriate injunction." *Id.* at ¶ 22. The Undersigned agrees.

8

The third element requires that the movant prove that "the threatened injury outweighs the harm the preliminary injunction would cause the other litigant." *Head Kandy, LLC v. McNeill*, No. 23-CV-60345, 2023 WL 6309985, at *16 (S.D. Fla. Sept. 12, 2023), *report and recommendation adopted*, No. 23-CV-60345-RAR, 2023 WL 7318907 (S.D. Fla. Nov. 7, 2023) (quoting *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014)). Thus, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Based on Plaintiff's likelihood of success on its trademark infringement claim, the balance of harms weighs in favor of granting Plaintiff a preliminary injunction. Unless Defendants are enjoined and restrained, Plaintiff is likely to suffer further injuries that cannot be fully compensated or measured in money. The costs and hardship related to protecting Plaintiff's trademarks outweighs any potential damage to Defendants. A preliminary injunction would prevent Defendants from publicly using Plaintiff's trademarks without permission. **That is not a harm.** But, even if it were, this purported "harm" would not outweigh the justification behind issuing this preliminary injunction.

The final element is whether "the entry of relief would serve the public interest." *Schiavo ex. Rel Schindler*, 403 F.3d at 1226. Here, the imposition of a preliminary injunction would not disserve the public interest because "[t]he public interest **favors** issuance of the preliminary injunction to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit products as Plaintiffs' genuine

9

goods." *Richemont Int'l v. Individuals*, No. 21-62503-CIV-WILLIAMS, 2022 U.S. Dist. LEXIS 33072, at *12 (S.D. Fla. Jan. 13, 2022) (emphasis added).

The Undersigned finds that Plaintiff has successfully met each of the necessary elements for a preliminary injunction.

*Bond*

The Undersigned previously recommended [ECF No. 14] that Plaintiff be required to post a $10,000 bond in connection with the TRO. The Court agreed [ECF No. 17], and Plaintiff did in fact post that bond [ECF No. 26]. The Undersigned respectfully recommends that the $10,000 bond previously posted also encompass the Preliminary Injunction.[6]

### III.   CONCLUSION

For the reasons outlined above, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's Motion for a Preliminary Injunction [ECF No. 10].

Plaintiff is instructed to provide a copy of this Report and Recommendations to Defendants, file Certificates of Service on CM/ECF once complete, and provide a proposed order adopting this Report and Recommendations to Judge Williams via email (williams@flsd.uscourts.gov) by the conclusion of the objections period below.

---

[6]   It is well-established that the amount of security required by [Rule 65(c)] is a matter within the discretion of the trial court, and the court may elect to require no security at all." *TracFone Wireless, Inc. v. Wash.*, 978 F. Supp. 2d 1225, 1235 (M.D. Fla. 2013) (quoting *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005*)). See Chanel, Inc. v. bdlady.com*, No. 20-60568-CIV, 2020 WL 3266567, at *5 (S.D. Fla. Mar. 17, 2020) (requiring the plaintiff to post a $10,000.00 bond based on the plaintiff's evidence of trademark infringement).

### IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, on March 25, 2025.

Jonathan Goodman
CHIEF UNITED STATES MAGISTRATE JUDGE

**Copies Furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record